# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Stephen Wayne Carlson,                              Civ. No. 12-532 (JNE/JJK)

            Plaintiff,

v.

U.S. Bank Home Mortgage; Gittleman
Management Corp., director of the
putative board of directors of Gallery
Tower Condominium Association;
Andrew Gittleman, director of the
putative board of directors of Gallery
Tower Condominium Association; and
Strobel & Hanson PA, director of the
putative board of directors of Gallery
Tower Condominium Association;

            Defendants.

---

Stephen Wayne Carlson, P.O. Box 2361, St. Paul, MN 55102, *pro se.*

Paul A. Weingarden, Esq.,  and Kevin T. Dobie, Esq., Usset Weingarden & Liebo
PLLP, Counsel for Defendant U.S. Bank Home Mortgage.

B. Shane Barnes, Esq., Charles E. Jones, Esq., and John E. Radmer, Esq.,
Meagher & Geer, PLLP, counsel for Defendants Gittleman Management Corp.
and Andrew Gittleman.

Corrine Ivanca, Esq., and Richard J. Thomas, Esq., counsel for Defendant
Strobel & Hanson PA.

Stephen Wayne Carlson,                    Civ. No. 12-531 (JNE/JJK)

                    Plaintiff,

v.

Gittleman Management Corp., director
on the putative board of directors of
Gallery Tower Condominium
Association; Strobel & Hanson PA,
director on the putative board of
directors of Gallery Tower
Condominium Association; and Gary
Edwards, purported GTCA board chair;

                    Defendants.

Stephen Wayne Carlson, P.O. Box 2361, St. Paul, MN 55102, *pro se.*

B. Shane Barnes, Esq., Charles E. Jones, Esq., and John E. Radmer, Esq.,
Meagher & Geer, PLLP, counsel for Defendants Gittleman Management Corp.
and Andrew Gittleman.

Corrine Ivanca, Esq., and Richard J. Thomas, Esq., counsel for Defendant
Strobel & Hanson PA.

## JOINT REPORT AND RECOMMENDATION IN RELATED CASES

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION

These related cases are before the Court on several dispositive motions.

In *Carlson v. U.S. Bank Home Mortgage, et al.*, Civ. No. 12-532 (JNE/JJK)

(hereinafter "the 532 case"), the District Court has referred the following motions

to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b) and Local Rule 72.1: (1) Defendants Gittleman Management and Andrew Gittleman's Motion for Summary Judgment (Doc. No. 20); (2) Defendant Strobel & Hanson PA's Motion for Summary Judgment and Motion to Dismiss (Doc. No. 28); and (3) Defendant U.S. Bank Home Mortgage's Motion to Dismiss (Doc. No. 35). And in *Carlson v. Gittleman Management Corp., et al.*, Civ. No. 12-531 (JNE/JJK) (hereinafter "the 531 case"), the District Court has referred the following motions to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and Local Ruel 72.1: (1) Defendants Gary Edwards and Gittleman Management Corp.'s Motion for Summary Judgment (Doc. No. 16); and (2) Defendant Strobel & Hanson PA's Motion for Summary Judgment and Motion to Dismiss (Doc. No. 25).

For the reasons that follow, this Court recommends that the motions be granted and both actions be dismissed.

## BACKGROUND

Plaintiff Stephen Wayne Carlson originally filed the 532 case as an adversary proceeding in a pending bankruptcy action in the United States Bankruptcy Court for the District of Minnesota. *See In re Carlson*, Bankr. No. 11-34420-RFK, Doc. No. 53 (Bankr. D. Minn. Dec. 9, 2011). On February 24, 2012, United States Bankruptcy Judge Dennis D. O'Brien transferred the adversary proceeding to the United States District Court for the District of Minnesota. (The 532 case, Doc. Nos. 1-26, 1-27, Transfer Order.) Carlson also originally filed the

3

531 case as an adversary proceeding in the same bankruptcy action. *See In re Carlson*, Bankr. No. 11-34420-RFK, Doc. No. 53 (Bankr. D. Minn. Dec. 9, 2011). On February 24, 2012, Bankruptcy Judge O'Brien also transferred the 531 case to the District Court. (The 531 case, Doc. No. 1-21, Transfer Order.) This Court then opened these civil actions on February 29, 2012. (The 532 case, Doc. No. 1; The 531 case, Doc. No. 1.) The Complaint in each of these cases concern the same subject matter.

### The 532 Case

Carlson's Complaint in the 532 case concerns a condominium association dispute dating back to 2009. In his Complaint, Carlson alleges that he bought a condominium unit in 1998 in the Gallery Towers Condominium complex located in St. Paul, Minnesota.[1] (The 532 case, Doc. No. 1-1, Compl. 1–2.) He thereby became a member of the Gallery Tower Condominium Association ("GTCA"), an association of the unit owners in the Gallery Towers. (*Id.* at 1.) Defendant U.S. Bank Home Mortgage holds the promissory note that financed the purchase of Carlson's unit and services the mortgage on that property. (*See id.* at 3.) It appears that Carlson alleges that Defendant Gittleman Management is the property manager for the GTCA and Defendant Andrew Gittleman is a member

---

[1]     Carlson owns the unit with his wife, Vicki Carlson. Vicki was a debtor in the bankruptcy action from which this adversary case was transferred to the District Court. She is not a named plaintiff in the caption of the Complaint, although Carlson purports to bring this action on her behalf and she apparently signed the pleading. (*See*, the 532 case, Compl. 1, 19.)

of the GTCA board of directors.  (*See id.* at 1 (caption), 2 n.4, 3 n.7, 4 n.8.)  And

Defendant Strobel & Hanson PA provided legal services to GTCA and Mr.

Gittleman during prior litigation.  (*Id.* at 4 n.8.)

Generally speaking, Carlson does not differentiate between the actions of

the various Defendants in his Complaint in the 532 case.  Thus, aside from a few

instances where Carlson does tie his allegations to a specific Defendant's

conduct, it is difficult to discern the nature of Carlson's claims.  This Court cannot

tell, for instance, which Defendant is allegedly responsible for certain acts that he

attributes generally to "Defendants," what parties he claims to have a contractual

relationship with, what contract he refers to when he asserts that a breach has

occurred, what provision of any such contract has been breached, or to whom he

attributes any statement on which he bases his allegations of misrepresentation

and fraud.  With these observations in mind, this Court notes that many of the

matters addressed by Carlson's Complaint have been the subject of prior

litigation between Carlson and some or all of the named Defendants, *see Gallery

Tower Condo. Assoc. v. Carlson* ("*Gallery Tower*"), No. A10-1403, 2011 WL

2302701 (Minn. Ct. App. June 13, 2011), and that prior litigation provides a

sufficient reference point for making sense of the allegations in this case.

During the summer of 2009, the GTCA board of directors determined that

there was a problem with the Gallery Towers' heating and air conditioning

("HVAC") system.  *Id.* at *1.  The repairs required unit owners to provide access

to their units so that pipes within the walls could be replaced.  *Id.*  To facilitate the

5

work, the GTCA board of directors decided to install a master-key system, which included the installation of new locks on all of the units' entry doors.  *Id.*

Displeased with these developments, Carlson and other GTCA members attempted to remove the GTCA board and elect a new board.  *Id.*; (*see* the 532 case, Compl. 4 n.8 (discussing attempts to elect a new board)).  The vote to elect a new board was unsuccessful; fifty-five percent of the voters who attended the special meeting voted in favor of it, but because only seventy-six percent of the unit owners attended, there was less than a majority of all owners in favor of removing the board.  The GTCA board determined that the motion to remove the board failed as a result.  *Gallery Towers*, 2011 WL 2302701, at *1; (*see* the 532 case, Compl. 4 n.8 (accusing "Defendants" of blocking the election of a new board); *see also* Compl. 7).

The work to replace the pipes in the unit walls was scheduled to begin in September 2009, but Carlson asserted that the board had been removed and that he would not allow access into his unit.[2]  *Gallery Towers*, 2011 WL 2302701, at *1; (*see* the 532 case, Compl. 5 (asserting that Defendnats replaced the HVAC system "without need or authority")).  The GTCA obtained an injunction against Carlson requiring him to provide access to his unit.  *Gallery Towers*, 2011 WL 2302701, at *2; (*see* the 532 case, Compl. 5 (referring to litigation over the vote

---

[2]    The work on this HVAC project appears to have contributed to assessments and charges by the GTCA of approximately $16,000, which Carlson asserts are "unauthorized."  (*See* the 532 case, Compl. 2 n.4.)

to remove the board)).  Carlson complied with the injunction and the HVAC project was completed, but he continued to refuse to allow replacement of his unit's locks as part of the master-key system despite receiving notice from GTCA that he would be charged a $25 daily fee until he consented to the change. *Gallery Towers*, 2011 WL 2302701, at *2; (*see* the 532 case, Compl. 2 n.4 (asserting that Defendants did not install a master key in his unit door, thereby creating a security risk)).  Carlson's objection to the results of the vote to elect a new board, his refusal to consent to the installation of a new lock for his unit's entry door, and his opposition to the imposition of a $25 daily fee for his refusal to consent to the master-key project, along with numerous other claims for "negligence, misconduct, tortious interference with contract, fraud, trespass, conversion, and defamation" were part of counterclaims asserted against GTCA, Gittleman Management, Gittleman, and Strobel & Hanson, among others. *Gallery Towers*, 2011 WL 2302701, at *2.  At the state district court, the GTCA obtained summary judgment and an award of attorney's fees, and on appeal, the Minnesota Court of Appeals decided all the issues Carlson raised in the litigation against him.  *See id.* at *3–*8.

In a direct attempt to undue that unfavorable decision, here Carlson asserts that Defendants have never had any right to interfere with his front door locks or the HVAC system in the Gallery Tower condominium complex, and he claims that the other issues raised in his prior litigation involved a "material breach of our ownership agreement[.]"  (*See* the 532 case, Compl. 11–12 (further

7

referring to these events as a "trespass to and theft of . . . our right to maintain our HVAC system, or key our front door").) Based on these actions, Carlson also asserts a litany of constitutional and tort claims. He asserts violations of his First and Fourteenth Amendment rights under the United States Constitution and of the Contracts Clause of the Minnesota Constitution and the United States Constitution. (*Id.* at 15.) His tort claims include the following: "trespass, destruction of property, civil conspiracy, invasion of privacy, interference in our contractual relations and prospective business advantage, fraudulent misrepresentation, injurious falsehood, defamation and disparagement, breach of . . . duty, including fiduciary duty, negligence, [and] breach of trust." (*Id.*)

Sometime in 2011, after the prior litigation discussed above had commenced, Carlson alleges that Defendants took steps to disable the telecommunication utilities in his condominium unit, including his phone, internet, and cable television services. (*See* the 532 case, Compl. 6.) Carlson had apparently been receiving these services from Comcast, a provider of these services, for some time, but Defendants believed that cable and internet services could be obtained at cheaper cost from a different provider. (*See id.* at 7 n.7 ("[T]he putative board thought they could get a cheaper rate for internet and cable TV."); *id.* at 7–8 ("Defendants represented to ComCast that they owned our property and that as the owners, they (we) did not wish to continue our internet or cable TV, or telephone services. Accordingly, they directed ComCast to immediately terminate our cable and internet, and to disconnect our telephone by

May 16.").)  Carlson asserts that Defendants, and particularly GTCA, did not have any legal right to interfere with his internet, cable TV, and telephone services.  (*Id.* at 11.)  Carlson not only appears to claim that Defendants' acts concerning his telecommunications services are part of the laundry list of torts and constitutional violations he alleges in this action (*see id.* at 14–16), but he also claims that Defendants' failure to restore his use of Comcast's services violates the automatic stay provisions of 11 U.S.C. § 362 that applies in bankruptcy actions.  (*Id.* at 13.)

Carlson also appears to assert claims associated with foreclosure proceedings initiated by several Defendants.  (*See* the 532 case, Compl. 3–4 n.7 (discussing foreclosure notices from Strobel & Hanson and U.S. Bank's attempts "to sell the property non-judicially").)  He also references the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, in his Complaint, and refers to "debt [Defendants] claim to be collecting."  (*Id.* at 5.)  These debts appear to be related to costs of the foreclosure proceedings and encumbrances on Carlson's unit stemming from an unpaid special assessment for the HVAC repair discussed above, unpaid late fees for defaulting on that special assessment, the unpaid attorney's fees award from the prior litigation, unpaid monthly dues owed to the GTCA, and unpaid fines associated with the master-key system issues discussed above.  (*Id.* at 8 n.12 (incorporating by reference Exs. D and E to the Complaint – a foreclosure notice and a report of delinquent payments listing the basis for amounts prompting a foreclosure notice).)

*The 531 Case*

The gist of Carlson's Complaint in the 531 case is essentially the same as in the 532 case that is discussed above. However, Carlson focuses his attention in the 531 case on his allegations that Defendants Strobel & Hanson, Gittleman Management, and Gary Edwards,[3] have wrongfully caused Comcast to stop delivering telecommunications services to his condominium unit.

Carlson asserts that up until June 27, 2011, he was receiving telephone, cable television, and internet services through Comcast, his chosen provider. (The 531 case, Doc. No. 1-1, Compl. ¶ 1 at 3.) However, Defendants have now allegedly prevented him from receiving utilities from Comcast, instead requiring Carlson to receive such services from a different provider called Access Media 3. (*Id.* at 2–3.) As a result, Carlson asserts that Defendants have violated the automatic stay provision of the Bankruptcy Code, codified at 11 U.S.C. § 362, violated the utilities provision of the Bankruptcy Code, codified at 11 U.S.C. § 366, and committed violations of the FDCPA. (*Id.* ¶¶ 2–4, 7.) He also asserts that the deprivation of his telecommunications services has violated his constitutional rights under the First and Fourteenth Amendments and other provisions of the United States Constitution, as well as provisions of the Minnesota Constitution. (*Id.* ¶ 12.)

---

[3]  Carlson alleges that Gary Edwards is the chair of the GTCA board of directors. (*See* the 531 case, Compl. (caption).)

Defendants now move for summary judgment on Carlson's claims in the 531 case. Strobel & Hanson supported its motion with appropriate affidavits. (The 531 case, Doc. No. 28, Aff. of Einar Hanson ("Hanson Aff."); Doc. No. 29, Aff. of Jeffrey Underhill ("Underhill Aff."); Doc. No. 30, Decl. of Corrine Ivanca ("Ivanca Decl.").) Those affidavits set forth the following facts, most of which are undisputed. Strobel & Hanson is a law firm that has represented the GTCA in litigation between Carlson and the association. (The 531 case, Hanson Aff. ¶¶ 1–3.) Strobel & Hanson's lawyers became aware that after that litigation concluded a dispute arose between Carlson and the condominium association's board of directors with respect to the provision of a building-wide cable television plan. (Hanson Aff. ¶¶ 19, 23; Underhill Aff. ¶¶ 3, 6.) These attorneys assert that neither they, nor anyone else in their firm, were involved in the association board's decisions to enter a contract with Access Media 3 for the provision of a building-wide cable television plan and did not have any responsibility for the cessation of Comcast services to Carlson's unit. (*See* The 531 case, Hanson Aff. ¶¶ 19, 23; The 531 case, Underhill Aff. ¶¶ 3, 6.)

Defendants Gittleman Management and Gary Edwards have also supported their motion for summary judgment with appropriate declarations. (The 531 case, Doc. No. 19, Decl. of Andrew J. Gittleman in Supp. of Mot. for Summ. J. ("Gittleman Decl."); Doc. No. 20, Decl. of John E. Radmer in Supp. of Mot. for Summ. J. ("Radmer Decl.").) The Declaration of John Radmer and the attached exhibits set forth the factual background of the state-court litigation

relating to Carlson's condominium. (Radmer Decl., *passim* & Exs. A–Q.) Because this Court has already discussed that litigation in some detail above, it will not repeat it here.

However, Andrew Gittleman, the Vice President of Defendant Gittleman Management Corporation, the property manager for the condominium association of which Carlson is a member, has testified in his declaration that the GTCA's board of directors first discussed providing the unit owners in the association with bulk cable services in November 2010. (Gittleman Decl. ¶¶ 1–2.) Gittleman explains that Access Media 3 was available to provide those cable services to the entire building. (*Id.* ¶ 2.) Contracting with Access Media 3 would make that company's cable television services mandatory for all the units in the association. (*Id.* ¶ 3.) However, internet and phone services through Access Media 3 would be optional. (*Id.*) The result of the decision would be that Comcast service would not be allowed in the building once Access Media 3 service started. (*Id.* ¶ 4.) The board then selected Access Media 3 as the building-wide cable-services provider. (*Id.* ¶ 5.) The services were installed in May 2011, and Carlson did not sign up for the optional internet or telephone services. (*Id.* ¶¶ 6–7.) Carlson then failed to pay the cable-television bill he was obligated to pay as a member the association. (*Id.* ¶ 8.)

In response to these motions, Carlson has filed, and this Court has reviewed the following submissions: a Memorandum in Opposition to Strobel & Hanson's Motion for Summary Judgment (the 531 case, Doc. No. 34); a

Declaration of Stephen W. Carlson in Opposition to Strobel & Hanson's Motion for Summary Judgment (the 531 case, Doc. No. 35); a Notice of Proof of Claim (the 531 case, Doc. No. 36); a July 25, 2012 Declaration of Stephen W. Carlson in Opposition to Defendants' Motions for Summary Judgment and to Dismiss (the 531 case, Doc. No. 37); and a Declaration of Stephen W. Carlson for Response to Defendants' Motion for Summary Judgment and Dismissal for Both 12-cv-531 and 12-cv-532 (*see*, *e.g.*, the 531 case, Doc. No. 47).

## DISCUSSION

## I.     LEGAL STANDARDS

### A.     Motion to Dismiss or for Judgment on the Pleadings

A district court applies the same standard to motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and to motions to dismiss for failure to state a claim under Rule 12(b)(6). *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive either type of motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative

level.  *See Twombly*, 550 U.S. at 555.  "[L]abels and conclusions" are not

sufficient, and are not entitled to an assumption of truth.  *Iqbal*, 129 S.Ct. at

1949 (quotations and citation omitted).

The court does not consider matters outside the pleadings under

Rule 12(c).  *See* Fed. R. Civ. P. 12(d).  The court may, however, consider

matters of public record and materials that are "necessarily embraced by the

pleadings."  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.

1999) (quotations and citation omitted).

### B.    Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  The moving party has the initial responsibility of

demonstrating that there is no genuine issue of material fact to be decided.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When a motion for summary

judgment has been made and supported by the pleadings and affidavits, the

burden shifts to the party opposing the motion to proffer evidence demonstrating

that a trial is required because a disputed issue of material fact exists.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## II.    ANALYSIS IN THE 532 CASE

### A.    Carlson's Previously Litigated Claims Should be Dismissed

As described above, Carlson has already litigated the vast majority of

issues that he raises as part of the 532 case.  His claims concerning charges and

assessments encumbering his condominium unit, issues relating to the vote to replace the GTCA board in 2009, the installation of a new lock to his unit's entry door and daily charges associated with his refusal to consent to that installation, and the requirement that he pay attorney's fees incurred by GTCA when it was forced to obtain an injunction before it could complete work on the HVAC system in his unit were all raised and decided against him in the earlier litigation.[4] *See Gallery Towers*, 2011 WL 2302701, at *3–*8 (rejecting arguments that the GTCA board had been removed, concluding that the GTCA had the legal right to make the repairs, rejecting arguments concerning the installation of a new lock in his unit for the master-key system, rejecting constitutional claims, and rejecting arguments that attorney's fees and costs were improperly awarded).

Because these matters have already been litigated in state court, Defendants argue that Carlson's claims against them should be dismissed under Rule 12(b)(6) or Rule 12(c) on grounds that they are barred by the doctrine of collateral estoppel or the *Rooker-Feldman* doctrine. (The 532 case, Doc. No. 22, Gittleman Defs.' Mem. in Supp. of Mot. for Summ. J. ("Gittleman Mem.") 15–20; Doc. No. 30, Strobel & Hanson Mem. in Supp. of Mot. for Summ. J. and Mot. to Dismiss ("S&H Mem.") 2, 9–12.) Having considered Carlson's Complaint in the

---

[4]     The only claims Carlson brings in the 532 case that were not raised and decided in that earlier litigation are those concerning the Fair Debt Collection Practices Act, the alleged violation of the automatic stay in Carlson's bankruptcy action, and Defendants' alleged interference with Carlson's choice of telecommunications services provider. These claims are addressed *infra* at Parts II.B–D.

532 case and the decision of the Minnesota Court of Appeals in *Gallery Towers*, this Court concludes that the claims Carlson previously raised are barred by the doctrine of collateral estoppel.[5]

This Court is bound by an earlier decision of a Minnesota court under the doctrine of collateral estoppel when the courts of Minnesota would bar subsequent litigation of a claim. *See Baker Elec. Coop. Inc. v. Devils Lake Sioux Indian Tribe*, 28 F.3d 1466, 1475 (8th Cir. 1994). Collateral estoppel prevents a party from relitigating the same issues that have already been litigated by the parties in a prior action and issues that are essential to the resulting judgment in the earlier case. *See Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982). Collateral estoppel applies to bar a subsequent lawsuit when: (1) the issue to be decided was identical to one in a prior adjudication; (2) there was a final judgment on the merits in the earlier case; (3) the estopped party was a party in the prior case; and (4) the estopped party was given a full and fair opportunity to be heard on the issue. *See Illinois Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003).

---

[5]    Because this Court bases its decision on collateral estoppel it does not address the *Rooker-Feldman* doctrine directly. That doctrine "precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." *Snider v. City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998); *see Twin Lakes Sales, LLC v. Hunter's Specialties, Inc.*, Civ. No. 05-555 (ADM/AJB), 2005 WL 1593361, at *3 (D. Minn. July 6, 2005) (declining to reach *Rooker-Feldman* doctrine's applicability because of a decision based on collateral estoppel).

In the 532 case, Carlson attempts to relitigate identical issues to those he raised in the *Gallery Towers* case. In *Gallery Towers*, there was a final judgment on the merits when the *Gallery Towers* case was dismissed on summary judgment and judgment was entered against Carlson. Carlson was a party in that case, and he had a full and fair opportunity to be heard on the issues he seeks to relitigate here. In other words, in the state-court litigation that had concluded before he filed this adversary proceeding, Carlson litigated and lost on nearly every claim he raises in this Complaint. Now, by seeking damages, injunctive relief, and other remedies in an adversary proceeding in the bankruptcy court, and by listing causes of action that differ only in name from those litigated in the prior adjudication, Carlson essentially asks this Court to reverse the decisions of the Ramsey County District Court and the Minnesota Court of Appeals. But this is not an appropriate forum for Carlson to appeal the decisions of the courts of the State of Minnesota. With the exception of habeas corpus review under 28 U.S.C. § 2254, the United States Supreme Court is the only federal court that may review a state court's judicial decision. *See* 28 U.S.C. § 1257(a).

Because all of Carlson's previously litigated claims are barred by collateral estoppel, this Court recommends that they be dismissed under Rules 12(b)(6) and 12(c). This includes all contract claims, tort claims, statutory claims (including his claims under Racketeer Influence and Corrupt Organizations Act), and the constitutional claims that Carlson asserts here that are premised on

matters raised in the *Gallery Towers* litigation.  Thus, the only claims that need not be dismissed on collateral estoppel grounds are those concerning the Fair Debt Collection Practices Act, the discontinuation of his telecommunications services, and the alleged violation of the automatic stay provisions of the Bankruptcy Code.

### B. Carlson's Fair Debt Collection Practices Act Claims Should be Dismissed for Failure to State a Claim

#### 1. Foreclosure Proceedings

Carlson's claims under the Fair Debt Collection Practices Act ("FDCPA") relating to foreclosure proceedings allegedly initiated by Defendants should also be dismissed.  As an initial matter, he has failed to state a claim on which relief can be granted against either Gittleman Management or Andrew Gittleman because his pleading does not even hint that these Defendants have engaged in conduct that could subject them to liability on these claims.  This Court will not supply those facts under the guise of liberally construing Carlson's *pro se* Complaint.  The failure to allege any such facts entitles these Defendants to dismissal of those claims against them under Rule 12(b)(6).

Carlson does at least mention that U.S. Bank and Strobel & Hanson are responsible for initiating foreclosure proceedings against him, which appear to form the basis for Carlson's FDCPA claims.[6]  (*See* the 532 case, Compl. 3 n.7

---

[6]     Carlson seems to allege that the assessment of fees relating to the installation of master-key system and the replacement of the HVAC system in his

(Footnote Continued on Following Page)

(asserting that Strobel & Hanson and U.S. Bank attempted to foreclose on

Carlson's condo "non-judicially").)  Both U.S. Bank and Strobel & Hanson argue

that Carlson fails to state a claim under the FDCPA because he has not alleged

that they are debt collectors within the meaning of the statute.  (The 532 case,

Doc. No. 37, U.S. Bank's Mem. in Supp. of Mot. to Dismiss ("U.S. Bank Mem.")

16; S&H Mem. 15–17.)

This Court agrees with Defendants that Carlson has failed to allege that

the FDCPA applies to U.S. Bank and Strobel & Hanson in the 532 case.  The

FDCPA applies to abusive actions taken in the collection of a debt when those

acts are taken by a "debt collector."  15 U.S.C. § 1692a(6).  A "debt collector" is:

> any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the
> collection of any debts, or who regularly collects or attempts to
> collect, directly or indirectly, debts owed or due or asserted to be
> owed or due another. . . . For the purpose of section 1692f(6) of this

---

(Footnote Continued from Previous Page)
condominium complex, as well as the requirement that he pay attorney's fees in
connection with earlier litigation, imposes liability under the FDCPA.  (The 532
case, Compl. 6–7, 7 n.11.)  However, Carlson does nothing more than
conclusively assert that Defendants are liable under the FDCPA because these
charges were not lawful.  To reach such a conclusion, this Court would simply be
undoing the judgment of the Minnesota courts that have already decided such
issues against Carlson.

Carlson also includes an allegation that misrepresentations were made to
the bankruptcy court concerning the amount he owes for assessments, charges,
and other fees associated with the prior litigation.  (The 532 case, Compl. 8 & 8
n.12.)  This Court construes these claims as yet another attempt to relitigate the
propriety of the decision of the Minnesota courts.  Carlson cannot use the
FDCPA as an end-run to create some appellate jurisdiction here over state court
decisions.

title, such term also includes any person who uses any
instrumentality of interstate commerce or the mails in any business
the principal purpose of which is the enforcement of security
interests. . . .

*Id.* Carlson does not allege any facts that plausibly assert U.S. Bank and Strobel

& Hanson are "debt collectors" within the meaning of the FDCPA. He does not

allege that either used any instrumentality of interstate commerce or the mails as

part of a business with the principal purpose of collecting debts or that either

regularly collects debts owed or due to another.

Moreover, Carlson's FDCPA claims relating to the initiation of foreclosure

proceedings are barred by the statute of limitations. The FDCPA provides that

any action to recover damages must be brought under the statute within one year

of the violation. 15 U.S.C. § 1692k(d). Carlson filed the 532 case on

December 9, 2011. He asserts that U.S. Bank and Strobel & Hanson initiated

foreclosure proceedings against him in January 2010. (The 532 case, Compl. 3

n.7.) Carlson therefore filed his FDCPA claims after the statute of limitations

expired, which occurred at the latest on January 30, 2011.

Thus, this Court concludes that Carlson's FDCPA claims relating to

foreclosure proceedings should be dismissed. To the extent that Carlson has

any claims relating to the foreclosure proceedings that are premised on

Minnesota law, this Court recommends that those claims be dismissed under 28

U.S.C. § 1367(c), which allows the district courts to decline to exercise

supplemental jurisdiction over a supplemental state law claim when all of the claims over which it has original jurisdiction have been dismissed.

### 2. Telecommunications Issues

Carlson appears to allege that Defendants are liable under the 15 U.S.C. § 1692f(6) for the discontinuation of his telecommunications services. (The 532 case, Compl. 6–7 (referring to "disablement . . . of the property by deprivation of telecommunications utilities—phone, internet and cable TV").) Carlson also appears to assert that Defendants violated 15 U.S.C. § 1692e(4)–(7) by making false representations to Comcast regarding who owned the condominium unit at issue. (*Id.* at 7–8.) These claims should also be dismissed because Carlson does not allege any facts showing that the discontinuation of his telecommunications services or any representations made to his telecommunications provider had anything to do "with the collection of any debt," 15 U.S.C. § 1692e, or "means to collect or to attempt to collect any debt," 15 U.S.C. § 1692f.

### C. Carlson's Claims Concerning his Telecommunications Services Should be Dismissed

Carlson also appears to have asserted that his constitutional rights have been violated as a result of actions taken by one or more Defendants that led to the discontinuation of his telecommunications services through his preferred utilities provider, Comcast. (The 532 case, Compl. 16 (referencing the First and Fourteenth Amendments).) This Court can discern nothing in Carlson's

complaint that sets forth any such constitutional claim, and therefore recommends that they be dismissed.

Carlson also appears to allege that the discontinuation of his telecommunications utilities through Comcast constituted a breach of his "ownership agreement" as well as state-law torts. (The 532 case, Compl. 11–12, 14–15.) As with any state-law claims Carlson asserts relating to foreclosure proceedings, this Court recommends that these and any other state-law claims concerning his telecommunications services be dismissed from the 532 case under 28 U.S.C. § 1367(c), which allows the district courts to decline to exercise supplemental jurisdiction over a supplemental state law claim when all of the claims over which it has original jurisdiction have been dismissed.

### D. Carlson's Claims Concerning a Violation of the Automatic Stay Should be Dismissed

Finally, Carlson asserts that by refusing to restore his receipt of utilities from Comcast, Defendants violated the automatic stay provisions of 11 U.S.C. § 362. (The 532 case, Compl. 13.) That statute protects a debtor who has filed a bankruptcy action from creditors' commencement or continuation of judicial or administrative action against the debtor or to recover a claim against the debtor. *See* 11 U.S.C. § 362(a)(1). It also operates a stay of the following:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

*Id.* § 362(a)(2)–(8).

Any action that Carlson alleges Defendants took with respect to the discontinuation of his telecommunications services from the provider of his choice simply does not fall under any of these provisions. He does not allege that it involved the commencement of any proceeding, judicial, administrative, or otherwise. He does not allege that Defendants were attempting to collect on some claim against him as a debtor by having his telecommunications switched from one provider to another. And he does not allege that Defendants were taking possession of his property or doing anything to create, perfect, or enforce a lien against his property. To construe his claim most charitably, Carlson is

asserting that Defendants, or more precisely the GTCA board of directors, lacked the legal authority to require him to receive telecommunications services from a particular provider. But that allegation has nothing to do with the automatic stay provision, and Carlson alleges no facts that show the action taken by any Defendant with respect to his telecommunications services has anything to do with his bankruptcy proceeding at all. Thus, this Court recommends that Carlson's claims under the automatic stay provision of the Bankruptcy Code be dismissed.

## III.    ANALYSIS IN THE 531 CASE

### A.    Carlson's Previously Litigated Claims Should be Dismissed

Carlson's Complaint in the 531 case discusses some of the same matters that this Court recommends be dismissed under the doctrine of collateral estoppel in the 532 case. He complains about assessments and fees associated with the master-key program, the repairs to the HVAC system in the Gallery Towers building, and the failed vote to replace the GTCA board of directors. To the extent he asserts any claims in the 531 case based on these allegations, this Court recommends that those claims be dismissed under the doctrine of collateral estoppel for the same reasons discussed *supra* in Part II.A. of this Joint Report and Recommendation.

In the 531 case, Carlson also appears to be alleging that this Court should invalidate the GTCA board's decision to adopt a building-wide cable services program because the board lacked authority to do so. (The 531 case, Compl.

24

¶ 1 at 1–2 n.2.)  The basis for this allegation is Carlson's persistent belief that the board was not properly elected because they had been voted out on August 17, 2009.  (*Id.*)  But this claim, like all the others relating to the failed vote to replace the board, has already been litigated in the *Gallery Towers* case, and collateral estoppel bars this Court from undoing that decision.

### B.   Defendants are Entitled to Judgment as a Matter of Law on Carlson's Claims under 11 U.S.C. § 362 and 11 U.S.C. § 366

Turning to the claims Carlson raises in the 531 case that were not previously litigated, this Court concludes that Strobel & Hanson is entitled to judgment as a matter of law on Carlson's claims that the law firm violated the Bankruptcy Code's automatic stay.  Through the affidavits Strobel & Hanson submitted (the 531 case, Doc. Nos. 28–29), Strobel & Hanson has shown that the firm had no involvement whatsoever in the decision to discontinue Carlson's telecommunications services.  Strobel & Hanson is a law firm that has represented the GTCA in litigation relating to matters that are independent of Carlson's telecommunications-services claims.  Strobel & Hanson's relationship with GTCA in that capacity does not, without more, reasonably give rise to an inference that the firm is responsible for the association's decision to change the way its members receive telephone, cable television, and internet services.  Nothing in Carlson's submissions to the Court suggest otherwise.  Moreover, Carlson has not shown that Strobel & Hanson took any action to collect a pre-petition debt, and therefore Strobel & Hanson could not have violated the

automatic stay provisions of 11 U.S.C. § 362.  Carlson's automatic-stay claims against Strobel & Hanson should therefore be dismissed.

Concerning Carlson's claims against Strobel & Hanson under 11 U.S.C. § 366, cable television and internet services are not "utilit[ies]" within the meaning of 11 U.S.C. § 366.  *See In re Moorefield*, 218 B.R. 795, 796 (Bankr. M.D.N.C. 1997) (concluding that even if a cable services provider had a monopoly in the area, "cable television does not rise to the level of the other utilities listed under the legislative history . . . . Cable television is not a necessity as millions of Americans continue to exist without such a service").  Thus, Carlson's claims fail as a matter of law, and this Court recommends that the claims against Strobel & Hanson under 11 U.S.C. §§ 362 and 366 be dismissed.  In addition, for the same reasons that this Court concluded that Strobel & Hanson is entitled to judgment as a matter of law on Carlson's claims under 11 U.S.C. § 366, Gittleman and Edwards are entitled to judgment as a matter of law on Carlson's claims against them under that provision.

Concerning Carlson's claim that Gittleman and Edwards violated the automatic stay, Gittleman and Edwards are entitled to judgment as a matter of law because the automatic stay provision contains no language that would require a condominium association to allow a unit owner's preferred cable provider access to the unit owner's home.  *See* 11 U.S.C. § 362(a) (listing the circumstances in which the filing of a bankruptcy petition operates as an automatic stay).  Further, Carlson has not shown any facts that Gittleman or

26

Edwards took any other action that violated the automatic stay.  Thus, all of Carlson's claims under 11 U.S.C. §§ 362 and 366 should be dismissed.

### C.    Defendants are Entitled to Summary Judgment on Carlson's Claims under the Fair Debt Collection Practices Act

Carlson's claims in the 531 case against Strobel & Hanson under the FDCPA fail because he has not demonstrated any genuine dispute whether the law firm was involved in the decision to exclude Comcast services from the Gallery Towers building.  Further, this Court concludes that all Defendants are entitled to judgment as a matter of law on Carlson's FDCPA claims because Carlson has not shown that any Defendant was engaged in the collection of a debt in connection with the decision to exclude Comcast from the building.  The only FDCPA provisions Carlson refers to in his Complaint are 15 U.S.C. §§ 1692e and 1692f.  (The 531 case, Compl. ¶ 1 at 4 n.9.)  But these provisions apply to debt-collector conduct in connection "with the collection of any debt," 15 U.S.C. § 1692e, or where a debt collector uses "means to collect or to attempt to collect any debt."  15 U.S.C. § 1692f.  Nothing in Carlson's submissions in the 531 case demonstrate a genuine issue for trial whether the actions leading to the discontinuation of his cable services from Comcast and replacing them with services through Access Media 3 implicates these provisions.  Accordingly, this Court recommends that these claims be dismissed.

**D.  Defendants are Entitled to Summary Judgment on Carlson's Constitutional Claims**

Nothing in Carlson's Complaint in the 531 case or in any of his submissions to the Court raises any genuine issue for trial on any of the constitutional claims he appears to raise.  Any claims Carlson asserts under the Minnesota Constitution should also be dismissed because "[u]nlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution."  *Riehm v. Engelking*, No. 06-293 (JRT/RLE), 2007 WL 37788, at *8 (D. Minn. Jan. 4, 2007) (citing *Guite v. Wright*, 976 F. Supp. 866, 871 (D. Minn. 1997)).  Therefore, this Court recommends that all of Carlson's federal and state constitutional claims be dismissed.

**E.  The Court Should Dismiss any Remaining State Law Claims Concerning Carlson's Telecommunications Services under 28 U.S.C. § 1367(c)**

Finally, Carlson's Complaint in the 531 case mentions a wide variety of state-law claims, including breach-of-contract and tort claims.  This Court recommends that the Court decline to exercise jurisdiction over these supplemental state-law claims under 28 U.S.C. § 1367(c) because it has recommended that all claims over which the Court has original jurisdiction be dismissed.

**IV. CARLSON SHOULD BE ENJOINED FROM FILING ANY FUTURE COMPLAINTS IN THIS DISTRICT UNLESS HE FIRST OBTAINS PERMISSION TO DO SO FROM A JUDGE IN THIS DISTRICT OR THE COMPLAINT IS SIGNED BY A LICENSED ATTORNEY**

This Court is troubled by an apparent pattern in Carlson's history as a litigant in this District of attempting to relitigate matters that have been decided against him in the past by one court or another. The number of times he has sought to use this Court as a means to undo judicial decisions he does not like convinces this Court that he should be enjoined from filing future lawsuits unless he has an attorney or receives permission of the Court. This Court does not make such a recommendation lightly, and, therefore discusses the basis for it below at some length.

A *pro se* litigant has a right of access to the courts, but that right does not ensure an unrestricted opportunity to file frivolous, malicious, or abusive lawsuits. *See In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988). "Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior." *Id.* When a litigant has frivolously litigated the same issues multiple times before, an injunction can be the appropriate remedy. *See Zhang v. Equity Office Props. Tr.*, No. 06-2265 (MJD/AJB), 2007 WL 26324, at *11 (D. Minn. Jan. 3, 2007) (citing *Sibley v. James*, Nos. 02-2047, 02-2022, 2002 WL 31159298, at *2 (8th Cir. Sept. 30, 2002)). Although not binding, this Court finds instructive the Second Circuit's list of factors to consider in determining whether a litigation injunction is appropriate:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

See Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) (cited in Dixon v. Deutsche Bank Nat'l Tr. Co., 360 F. App'x 703, 704 (8th Cir. Jan. 13, 2010) (unpublished)).

However, the use of a pre-filing injunction "against a pro se plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts." Cromer v. Kraft Foods N. Am., Inc., 390 F.2d 812, 818 (4th Cir. 2004) (quotations omitted). "In limiting a citizen's ability to litigate, a court should take special care to ensure that the restrictions placed on the party are taken together, not so burdensome as to deny the litigant meaningful access to the courts." Niles v. Wilshire Inv. Group, LLC, 859 F. Supp. 2d 308, 321 (E.D.N.Y. Mar. 21, 2012) (quotations omitted).

As noted above in this Joint Report and Recommendation, in these two cases, Carlson has essentially attempted to relitigate matters that he unsuccessfully litigated in the Minnesota courts prior to filing these adversary proceedings in his bankruptcy action. His Complaints in the 532 case and the 531 case both sought to have this Court undo the decision of the Minnesota

Court of Appeals in the *Gallery Towers* case. Carlson's attempt to relitigate the issues that he lost in that state litigation demonstrates that he either does not understand that he cannot use the federal courts as a means of appealing unfavorable decisions of the Minnesota courts or that, in spite of his awareness, he had some other motivation in bringing this adversary proceeding.

This is not the first time Carlson has filed duplicative lawsuits. For example, in another adversary proceeding transferred from the same bankruptcy action as the 531 case and the 532 case, Carlson asserted claims that were barred by the doctrine of res judicata. *See Carlson v. Minn. Dep't of Empl. and Econ. Devel., et al.*, Civ. No. 12-644, Doc. No. 35 at 3–5, 14–15 (Report and Recommendation Oct. 17, 2012) (discussing the overlap between Carlson's earlier state-court lawsuits relating to his eligibility for certain unemployment benefits and the claims he sought to relitigate in federal court, and concluding that the federal lawsuit was barred by res judicata). This Court recently recommended dismissal of those claims because Carlson had litigated and lost the same issues he raised in the transferred case. *Id.*, Doc. No. 35 at 14–15.

In another adversary proceeding recently transferred to this Court from the bankruptcy court, Carlson again asserted claims that were barred by the doctrine of res judicata. *See Carlson v. U.S. Dep't of Educ., et al.*, Civ. No. 12-645 (JNE/JJK), Doc. No. 25 at 4–5, 21–24 (Report and Recommendation Aug. 9, 2012) (discussing the dismissal of Carlson's 2003 lawsuit on grounds of res judicata, and concluding that the transferred adversary proceeding raised the

same claims again). In that action, Carlson asserted claims that repeated the same allegations he had made in a case filed in 1999, which he lost on summary judgment. After the 1999 case was decided against him, he filed another action in 2003, and United States District Court Judge Richard H. Kyle concluded that those claims were barred by res judicata as a result of the 1999 action. Undeterred, Carlson brought those same allegations as part of his adversary proceeding, and this Court again recommended that they be dismissed on grounds of res judicata. *Id.* at 23.

In 2009, Chief Judge Michael J. Davis ordered that several of Carlson's claims be dismissed on summary judgment on grounds of res judicata. *Carlson v. Ameriprise Fin., et al.*, Civ. No. 08-5303 (MJD/JJK), Doc. No. 84 at 3, 5–6, 9–10, 33 (Mem. Opinion and Order May 21, 2009) (noting that Carlson filed multiple complaints and lawsuits based on the same allegations of discrimination he asserted in the case against Ameriprise Financial and Kelly Services, and concluding that the prior litigation barred his later claims). In that action, Carlson was attempting to relitigate identical claims that he had raised in two earlier lawsuits that were decided against him. *Id.*, Doc. No. 84 at 5–6, 9–10.

These cases demonstrate that Carlson has no respect for the finality of the decisions of the state and federal courts in Minnesota. Despite the fact that he loses a case, he brings new lawsuits duplicative of those that courts have already decided against him, occasionally acknowledging that he is dissatisfied with an earlier ruling. *See Carlson v. U.S. Dep't of Educ., et al.*, Civ. No. 12-645

(JNE/JJK), Doc. No. 25 at 23 (Report and Recommendation Aug. 9, 2012) (quoting Carlson's memorandum of law in response to a motion to dismiss that characterized the summary judgment order in his 1999 litigation as "highly improper" and an "atrocious ruling"); *Carlson v. Ameriprise Fin., et al.*, Civ. No. 08-5303 (MJD/JJK), Doc. No. 84 at 26–7 (Mem. Opinion and Order May 21, 2009) (noting that "Carlson admits he is now attempting to relitigate the same claims that he brought in his First lawsuit").

The 531 case and the 532 case addressed in this Joint Report and Recommendation are just the latest examples in a lengthy pattern of Carlson's refusal to acknowledge that court decisions are final and that he cannot get repeated bites at the apple. That pattern prevents this Court from inferring that Carlson's repeated attempt to relitigate matters decided against him is an innocent mistake based on a misunderstanding of the law. Given that pattern, this Court is convinced that Carlson will continue to treat the litigation process like a carousel. He repeatedly refuses to accept that he has lost an issue he litigated in court, and for a period of time after a case is closed, the issues it decided will go away until they reappear in new cases Carlson will file that unnecessarily strain the Court's resources and require defendants to spend time and money to defend. Without placing a screening restriction on Carlson's ability to file future complaints, there is no way to ensure such repetitive filing will cease. For these reasons, this Court recommends that Carlson be enjoined from filing any additional lawsuits against any defendants in the District of Minnesota unless

Carlson receives permission to file the proposed Complaint from a judge in this District or the Complaint is signed by a licensed attorney.[7]

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings in *Carlson v. U.S. Bank Home Mortgage, et al.*, Civ. No. 12-532, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants Gittleman Management and Andrew Gittleman's Motion for Summary Judgment (Doc. No. 20), be **GRANTED**;

2.      Defendant Strobel & Hanson PA's Motion for Summary Judgment and Motion to Dismiss (Doc. No. 28), be **GRANTED**;

3.      Defendant U.S. Bank Home Mortgage's Motion to Dismiss (Doc. No. 35), be **GRANTED**; and

4.      This case be **DISMISSED**.

---

[7]      It appears that Carlson was previously subject to an identical litigation injunction as a result of Judge Davis's Order in Carlson's 2008 lawsuit against Ameriprise. *See Carlson v. Ameriprise Fin., et al.*, Civ. No. 08-5303 (MJD/JJK), Doc. No. 84 at 67, ¶ 13 (Memorandum Opinion and Order May 21, 2009). Judge Davis later struck the litigation injunction in an Amended Judgment. *Id.*, Doc. No. 114 (J. Sept. 21, 2009) (striking the litigation injunction in Paragraph 13 from the May 21, 2009 Order and Judgment). If circumstances made a pre-filing injunction against Carlson inappropriate in September 2009, this Court concludes that events since then have demonstrated Carlson's inability to stop filing duplicative suits.

Further, based on the foregoing, and all the files, records, and proceedings

in *Carlson v. Gittleman Management Corp., et al.*, Civ. No. 12-531, **IT IS**

**HEREBY RECOMMENDED** that:

1.      Defendant Strobel & Hanson PA's Motion for Summary Judgment

and Motion to Dismiss (Doc. No. 16), be **GRANTED**;

2.      Defendants Gittleman Management Gary Edwards' Motion for

Summary Judgment (Doc. No. 25), be **GRANTED**; and

3.      This case be **DISMISSED**.

And finally, **IT IS HEREBY RECOMMENDED** that:

1.      Carlson be enjoined from filing any additional lawsuits against any

defendants in the District of Minnesota unless Carlson receives permission to file

the proposed Complaint from a judge in this District or the Complaint is signed by

a licensed attorney.


Date: December 6, 2012          *s/ Jeffrey J. Keyes*_____
                                JEFFREY J. KEYES
                                United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**December 20, 2012,** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This

Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.